UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **WILLIAM KRYSTON,** Plaintiff, v. **BLAKE BURNS** Defendant. | Case No. 3:23-cv-1199-CLM |

## MEMORANDUM OPINION

City of Cherokee Officer Blake Burns arrested William "Billy" Kryston in 2023. Kryston alleges the arrest violated his Constitutional rights in four ways. (Doc. 1). Burns asks the court to grant him summary judgment on all four counts. (Doc. 12). For the reasons explained below, the court **GRANTS** the motion for summary judgment on Counts II and III and **DENIES** the motion for summary judgment on Counts I and IV. Those counts will go to trial.

## BACKGROUND

**1.      The chase and arrest of Chris Kryston**

Chris Kryston is Billy Kryston's brother. Chris is well known to Cherokee police, having been arrested many times and having lost his license because of a DUI. One night, Officers Blake Burns and Houston Berry were on patrol when Chris drove past Burns. Knowing that Chris had pending arrest warrants and no license, Burns signaled for Chris to pull over. Chris initially complied but then accelerated to evade Burns. Burns and Berry (in a separate vehicle) gave chase. Chris stopped when he reached his residential address. That address has a house and a camper; Chris and his girlfriend, Jodi Bohn, lived in the camper and Billy Kryston, his mother, and his stepfather ("the Ragans") lived in the house. Chris exited his car and fled until Burns and Berry tased then arrested

1

him. The officers also arrested Jodi Bohn for coming outside and interfering with Chris's arrest.

**2.    The arrest of William Kryston**

Billy Kryston was in the house when Chris and the police arrived. Hearing the commotion, Kryston went outside and filmed the encounter with his cell phone.

a. *The Ragan's home*: The arrest happened at night and can be depicted by using Kryston's cell phone video. But first, the court depicts the Ragan's house in daylight because the structure is important. This wider shot shows Chris's camper in relation to the Ragan's house:



The next picture shows the front of the Ragan's house. The garage area is open to the outside with a door that enters the home. *See* red arrow. The roofline extends beyond the front of the house to provide some overhead coverage for the front porch and garage / carport. *See* blue circle.



b. *Kryston's Arrest*: Kryston walked outside to film the officers with his cell phone. As Kryston's video shows, Kryston walked beyond the house, into the driveway (pictures 1-2 below), and toward the officers as they walked Jodi Bohn to their vehicle (picture 3 below):



The video also shows Officer Berry shining his flashlight toward (if not on) Kryston for 15-20 seconds while the officers moved Bohn. Once Burns shut the door on Bohn, Burns turned toward Kryston. Burns told Kryston that he was under arrest and walked toward him:



Rather than comply, Kryston said, "Nah, you going to get the fuck off me" and retreated. The video ends there.

Burns followed Kryston down the driveway and, as Burns testified, "maybe a couple of feet" into the garage / carport area. Burns testified that, at that point, Kryston turned toward him in a gesture that looked like Kryston holding a gun. So Burns pulled his gun, then realized Kryston was instead holding a cell phone. Kryston then entered the house while Burns stayed outside with Berry and other officials who responded to their call. At his parents' urging, Kryston went back outside and was arrested. Officer Berry took Kryston to jail to be processed.

c. *Outstanding warrants*: Before that night, Colbert County and the City of Cherokee had outstanding warrants for Kryston's arrest. Cherokee Police Chief Joshua Phillips arrived at the Ragan's house when Kryston went back inside. Chief Phillips knew that Kryston—the stepson of Cherokee's former police chief (Ragan)—had outstanding warrants when Kryston came outside and was arrested.

d. *The Lawsuit*: Kryston sues Burns under § 1983 for illegal seizure, illegal entry, excessive force, and a First Amendment violation. Officer Burns argues he is entitled to summary judgment because there is no genuine dispute over the existence of probable cause to support the arrest. Officer Burns also argues a reasonable jury couldn't differ as to if he was lawfully on Kryston's property. Kryston counters that a reasonable juror could find that Burns lacked probable cause for the arrest and the entry into the Regan's home because filming Chris's arrest wasn't illegal.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial responsibility of telling the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## ANALYSIS

Kryston pleads four claims against Burns. Kryston agrees that the court should dismiss Count III (excessive force). *See* (doc. 18, p.3). The court thus limits its analysis to Counts I, II, and IV.

**Count I: Illegal Seizure / False Arrest**

Kryston first claims that Burns arrested him without reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendments. (Doc. 1, p. 4). Burns argues that the court should dismiss Count I on the merits or by finding qualified immunity for two reasons: (1) Burns had probable cause to arrest Kryston because of Kryston's actions that night or (2) the officers collectively knew that Kryston had outstanding arrest warrants. The court finds that a genuine dispute of fact bars summary judgment under both theories.

### A. Probable cause (actual or arguable)

Whether an arrest amounts to an "unreasonable seizure" turns on "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Burns' testimony and Kryston's video confirm that "the moment the arrest was made," *id.*, was immediately after Burns shut the door on Jodi Bahn and turned toward Kryston, who was standing in the driveway holding his cell phone.

1. *Actual probable cause*: Burns says that he had probable cause to arrest Kryston for three state-law crimes: obstruction, resisting Chris Kryston and Jodi Bohn's arrest, and menacing. (Doc. 14, pp. 11-15). In his brief, Burns supports probable cause for these crimes by pointing to actions that Kryston took ***after*** Burns announced he was under arrest, particularly the way Kryston held his cell phone and his flight into his house, declaring: "Kryston *acted like* he had been obstructing, resisting, and/or menacing." (Doc. 14, p. 14) (emphasis in original). But Burns cannot rely on post-arrest actions to retroactively support probable cause; Burns must point to evidence that he knew "at the moment the arrest was made" that would make his decision to seize Kryston reasonable. *Beck*, 379 U.S. at 91.

6

Yet Burns omits from his brief facts about what he saw Kryston do, or words he heard Kryston say, ***before*** he announced that Kryston was under arrest. Instead, Burns's statement of the facts jumps straight into Burns pulling his weapon and telling Kryston that he is under arrest:

> 22. The video depicts Officer Burns escorting Jodi Bohn to a patrol vehicle and then turning toward the carport of the Ragan home.
>
> 23. By the time Burns reaches the carport area where Kryston is standing, he has his service pistol raised toward Kryston and tells him he is under arrest.

(Doc. 14, p. 9) (Burn's undisputed facts # 22, 23) (highlight added). Burns cites no evidence that would support pulling a gun and arresting a person who he had yet to see or notice. In fact, Burns admitted during his deposition that he could not arrest Kryston if Kryston was merely observing his brother's arrest. *See* (Doc. 13-3, depo pp. 47-48).

Tellingly, Burns omits from his briefs the narrative of pre-arrest facts that he gave during his deposition. Burns testified that he told Kryston he was under arrest for "obstruction." (*Id.*, depo p. 47). And Burns testified that the criminal obstruction occurred when Kryston came out of the house and started yelling at the officers across the yard as they tried to detain Chris and Jodi Bahn. *See, e.g.*, (*Id.*, depo pp. 47, 86-89). That's also what Burns wrote in his arrest report:

> And began to secure [Chris] in my back seat when an unknown man emerged from the residence yelling at us stating something about cussing the female subject. I was able to see him from the waste (sic) up and he appeared to be holding a dark object in his hands holding it up. Jodi began to yell and I had to assist Officer Berry with her and trying to watch the unknown subject. Once Jodi was secured in his back seat I saw the male subject standing in the yard

> still holding something in his hands. I then told him he was under arrest. He then turned and ran towards the house.

(Doc. 13-3, p. 76). That's also the narrative Burns wrote in his complaint against Kryston for obstructing government operations: "William Kryston began to yell at Officers distracting them as they were trying to make an arrest." (Doc. 13-3, depo p. 77).

But Kryston denies having yelled anything at the officers; Kryston says that the only sound he made was a loud, coughing "huh" to announce his presence when he left the house. *See, e.g.*, (doc. 13-1, depo pp. 69, 76, 82, 97; doc. 17-1). And Kryston's cell phone video—the only video of the incident—supports his version of events. That is, the cell phone video shows Kryston exiting his house, giving a loud cough, then standing silently in his yard until Burns tells Kryston that he is under arrest. (Doc. 13-6) (cell phone video). Kryston does not yell at the officers before his arrest, nor does he approach them or otherwise impede their activities.

When confronted with Kryston's silence throughout the cell phone video, Burns speculated that Kryston must have had time to come outside, yell at the officers, then go back inside to grab his cell phone, then come outside a second time to film them in silence. (Doc. 13-3, depo pp. 88-90, 96). Kryston denies this. (Doc. 17-1, ¶ 8) (Kryston declaration).

As a result, there is a genuine dispute whether Kryston yelled at the officers or otherwise obstructed their arrests of Chris and Jodi, and there is a genuine dispute whether Kryston acted menacingly before his arrest.[1] If a reasonable juror believed Kryston's testimony; Kryston's declaration; and Kryston's cell phone video, that juror could find that Burns lacked probable cause to arrest Kryston for obstructing governmental operations, for preventing the arrests of Chris and Jodi, and for menacing. Burns has therefore failed to show that he is entitled to summary judgment based on probable cause that Kryston had committed or was committing a crime.

---

[1] Burns testified that Kryston said nothing threatening. (Doc. 13-3, depo pp. 80-81, 115).

2. *Arguable probable cause*: Burns argues alternatively that, even if he did not have actual probable cause that Kryston had committed a crime, he had "arguable probable cause" and is thus entitled to qualified immunity. *See Garcia v. Casey*, 75 F.4th 1176, 1186-87 (11th Cir. 2023) (explaining arguable probable cause). Under the arguable probable cause doctrine, this court must grant Burns with qualified immunity if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.*

The court finds that the same genuine fact dispute prevents a finding that a reasonable officer could have interpreted the law as permitting Burns to arrest Kryston immediately after he put Jodi Bahn in Berry's vehicle. As explained, the parties genuinely dispute whether Kryston said anything to the officers or took any actions that impeded their arrests of Chris and Jodi before Burns declared that Kryston was under arrest. A reasonable juror could listen to Kryston's testimony and watch his cell phone video, then decide that (a) the video depicted the entirety of Kryston's time outside and (b) Kryston said and did nothing other than record a cell phone video from his own sidewalk and driveway. If a reasonable juror made those fact findings—and the court must assume the juror would because Kryston is the non-moving party—then Burns would fail to prove that "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.* So the court must reject Burns' claim of qualified immunity under the arguable probable cause standard.

—

To sum up the probable cause arguments, there is a genuine dispute whether Burns had probable cause to arrest Kryston, so Burns is not entitled to summary judgment. That also means that Burns is not entitled to qualified immunity because, while no one disputes that Burns was acting in the scope of his discretionary duties when he arrested Kryston, a reasonable juror could find that Burns violated clearly established law when he arrested Kryston in his driveway without probable cause.

9

### B. Outstanding warrants

Alternatively, Burns argues that, even if he did not have probable cause to arrest Kryston in his driveway, Police Chief Joshua Phillips arrived at the Ragan's house before Kryston surrendered, and Chief Phillips knew that Kryston had outstanding arrest warrants. So even if Burns lacked probable cause to arrest Kryston for his acts that night, Kryston's arrest was lawful all the same.

But Burns misses the point. Kryston raises a Fourth Amendment claim of false arrest, not malicious prosecution, so the question is whether Burns unreasonably seized Kryston in his driveway by declaring he was under arrest.

The undisputed facts show that Chief Phillips was not present when Burns told Kryston that he was under arrest. To the contrary, Chief Phillips declared that "[b]y the time I arrived, however, it appeared that the situation was under control." (Doc. 13-7, p.4). Chief Phillips also declared that he "was generally aware at the time that there was an outstanding warrant (or warrants) for Billy Kryston. I assumed that, in addition to whatever grounds Blake Burns had for arresting Billy Kryston, the pending warrant or warrants I was familiar with provided an additional basis for Billy Kryston's arrest." (*Id.*) (highlight added). The court highlights "I was familiar with" to emphasize that neither Chief Phillips nor Officer Burns testified or declared that Phillips shared this information with Burns before Burns arrested Kryston. So Phillips' 'general awareness' cannot be imputed to Burns, thereby making an unreasonable act reasonable. *See Garcia*, 75 F.4th at 1188 (limiting the 'any crime' inquiry to "the collective knowledge of law officers if they maintained at least a minimal level of communication during their investigation").

At best, Kryston's outstanding warrant(s) may mitigate the damage an unreasonable seizure caused—*i.e.*, Kryston could have been arrested as soon Chief Phillips told Burns or Berry about the outstanding warrant.

10

But the outstanding warrants cannot affect the reasonableness of Burns' decision to seize Kryston because he did not know about them.

—

Because there is a genuine dispute whether Burns had arguable probable cause to believe Kryston committed any crime before he arrested Kryston, the court must deny Burns' motion to dismiss Count I (false arrest).

## Count II: Illegal entry

Kryston next alleges that Officer Burns violated his reasonable expectation of privacy given by the Fourth Amendment when Burns followed him into the Ragans' garage / carport. The parties do not dispute the relevant facts, which are confirmed by video that Kryston shot after the incident (doc. 13-1, Exs. 5-7):

- The Ragans parked their car under a covered area;
- That area has three walls; and,
- No door covers the fourth wall.

Because these facts are not genuinely disputed, the court can answer the legal question: Do the Ragans have a "garage" or a "carport"?

The difference matters. The Fourth Amendment protects from unreasonable searches and seizures areas in which a person has a "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). "The Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation[s] that society is prepared to recognize as 'reasonable.'" *Oliver v. United States*, 466 U.S. 170, 177 (1984) (quoting *Katz*, 389 U.S. at 361).

In *Coffin v. Brandau*, 642 F.3d 999 (11th Cir. 2011), the Eleventh Circuit found that enclosed garages have a reasonable expectation of privacy, while carports with at least one wall permanently exposed to the public do not. In finding that the plaintiff had a protected "garage," the court made closable doors the distinguishing feature: "[i]n contrast with a

carport, the attached garage has walls on three sides and has the capability, if the outside door is rolled down, of being closed to maintain privacy." *Id.* at 1012.

Having watched Kryston's videos, the court finds that the Ragans lack a door that would close off their carport from the public. The first door that creates an expectation of privacy is the door at the back of the carport that enters the Ragans' laundry room. Because Burns entered the exposed carport, but not the private laundry room, the court finds that there is no genuine issue of material fact that prevents the granting of summary judgment for Burns. So the court will dismiss Count II.

## **Count IV: First Amendment**

Kryston lastly claims that Officer Burns arrested him "without reasonable suspicion or probable cause, in retaliation for Kryston's exercise of his First Amendment rights (his recording of police activity) . . . ." (Doc. 1, p. 6). As the court explained in its Count I analysis, a reasonable juror could find that Burns arrested Kryston without probable cause. The same reasonable juror could watch Kryston's video and also find that Burns arrested Kryston because he was filming the arrests of Chris and Jodi Bhan. Because the court must view the evidence in a light most favorable to Kryston, the court finds that the parties genuinely dispute (a) whether Burns had probable cause to arrest and (b) whether Burns arrested Kryston because he was filming the officers' actions. As a result, the court will deny the motion to dismiss Count IV.

## CONCLUSION

For these reasons, the court **GRANTS** summary judgment for Officer Burns on Counts II and III and **DENIES** summary judgment and qualified immunity on Counts I and IV. The court will enter a separate order that sets the remaining counts for trial.

**DONE** and **ORDERED** on September 9, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE